FILED

2015 Mar-30  AM 11:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| DAN WAYLAN LETSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.:  3:13-cv-00168-SGC |
| | ) | |
| GENE MITCHELL, Lawrence County | ) | |
| Sheriff, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION[1]</u>

This is a civil rights action maintained by Michael Letson, as personal representative for the Estate of Dan Waylan Letson.  The plaintiff brings claims pursuant to 42 U.S.C. § 1983 against Gene Mitchell (Sheriff of Lawrence County, Alabama), James Baker (Chief Jailer for Lawrence County), Steven Frye and Tim Flannagin (Lawrence County Deputy Sheriffs), Quality Correctional Health Care ("QCHC),[2] and Dr. Johnny Bates for deliberate indifference to the serious medical needs of Dan Letson in violation of the Eighth and Fourteenth Amendments. (Doc. 30).  The plaintiff also brings state law claims for negligence and/or wantonness against the defendants.  (*Id.*).  The plaintiff was afforded an opportunity to amend his original complaint in response to the defendants' motions to dismiss that pleading.  (*See* Docs. 13, 14, 17, 18, 29 & 32).  Currently pending are a motion to dismiss the amended complaint filed by Sheriff Mitchell, Jailer Baker, and Deputies Frye and Flannagin (Doc. 34) and a motion for leave to file a motion to dismiss the amended complaint made by QCHC and Dr. Bates (Doc. 43).  The motions have been fully briefed (Docs. 39, 41, 46), and the parties have orally argued their positions (*see* Doc.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Rule 72 of the *Federal Rules of Civil Procedure*, the parties have voluntarily consented to the exercise of full dispositive jurisdiction by the undersigned magistrate judge.  (Doc. 52).

[2] The amended complaint incorrectly identifies QCHC as "Quality Corrections Health Care."  (Doc. 43-1 at 1).

47; docket entry dated March 4, 2015).  For the reasons discussed below, the motions are due to be granted.

## I. <u>Standard of Review</u>

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Twombly*, 550 U.S. at 555).  "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement" are insufficient.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted).

To survive a motion to dismiss for failure to state a claim on which relief may be granted brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). A court will not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. Rather, a complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556.

## II. **Amended Complaint**

The amended complaint alleges as follows: Dan Letson had a history of physical and mental health problems, including alcohol addiction. (Doc. 30 at ¶ 12). On August 15, 2011, Deputy Frye swore out a warrant for Dan Letson's arrest for permitting livestock to run at large in violation of § 3-5-2 of the Alabama Code. (*Id.* at ¶ 14). Dan Letson was arrested and jailed, and he immediately bonded out of jail. (*Id.*). He was intoxicated at the time Deputy Frye arrested him. (*Id.*).

On or about August 30, 2011, Deputy Flannagin swore out a warrant for Letson's arrest, again for permitting livestock to run at large. (*Id.* at ¶ 15). The State of Alabama filed a motion to revoke Dan Letson's bond, but rather than grant such motion, the District Court of Lawrence County, Alabama directed that Dan Letson be brought before the court upon his arrest. (*Id.*). When Deputy Frye or Deputy Flannagin[3] arrested Dan Letson and brought him before the Lawrence County District Court on August 30, 2011, Dan Letson was so intoxicated he could not communicate or stand. (*Id.*). The Lawrence County District Court noted Dan Letson " 'was intoxicated to such a degree he could not effectively communicate with the Court.'" (*Id.* at ¶ 16). Dan Letson was immediately taken to jail and was released on bond. (*Id.*).

On or about October 11, 2011, the State of Alabama filed another motion to revoke Dan Letson's bond. (*Id.* at ¶ 17). A writ of arrest was entered, and Deputy Frye arrested Dan Letson

---

[3] Paragraph 15 of the amended complaint alleges Deputy Flannagin arrested Dan Letson on August 30, 2011, while paragraph 16 of the amended complaint alleges Deputy Frye arrested Dan Letson on August 30, 2011. (*See id.* at ¶¶ 15-16).

immediately.  (*Id.*).  He was in such a state of intoxication at the time of his arrest he had to be carried to the officers' vehicle.  (*Id.*).  He was placed in jail and was not permitted to bond out until he "sobered up."  (*Id.*)  He did not receive any medical treatment, although the Lawrence County Jail had a nurse on staff, as well as a contract with Dr. Bates of QCHC.  (*Id.*).

On or about October 13, 2011, Dan Letson was brought before the Lawrence County District Court for a bond revocation hearing.  (*Id.* at ¶ 18).  Deputies Frye and Flannagin were present.  (*Id.*).  Dan Letson's condition had deteriorated to such a degree he required the assistance of officers to stand before the court.  (*Id.*).  The judge immediately ordered that Dan Letson be taken for medical treatment.  (*Id.*).  Deputies from the Lawrence County Sheriff's Department took Dan Letson to Bradford Medical Center for alcohol treatment.  (*Id.* at ¶ 19).  But when they arrived at Bradford, Dan Letson's condition was so critical, Bradford refused to accept him.  (*Id.*).  The deputies were instructed to take Dan Letson to an emergency hospital immediately.  (*Id.*).  Dan Letson was admitted to Lawrence Baptist Medical Center and then to Shoals Hospital, where he was treated from October 13, 2011 to November 14, 2011.  (*Id.* at ¶ 20).  While hospitalized, Dan Letson suffered the effects of having gone through severe alcohol withdrawal without medical assistance while detained, and he continued to suffer these effects until his death on January 27, 2013.  *(Id.* at ¶¶ 1, 20).

The plaintiff alleges employees of Sheriff Mitchell knew Dan Letson was in withdrawal at the time of his arrest and detention and, given Sheriff Mitchell has been sued twice before for failing to provide medical treatment to intoxicated individuals suffering similar symptoms, knew Dan Letson required medical attention.  (*Id.* at ¶ 21 (citing *Harper v. Lawrence County, Alabama*, No. 08-0658 (N.D. Ala. filed April 14, 2008); *Parker v. Lawrence County, Alabama*, No. 07-1011 (N.D. Ala. filed May 31, 2007))).

According to the amended complaint, Sheriff Mitchell has supervisory authority over the Lawrence County Jail. (*Id.* at ¶ 40). Furthermore, Sheriff Mitchell is responsible for developing and implementing policies and procedures regarding medical care at the jail, and he shares this responsibility with QCHC and Dr. Bates by way of an agreement. (*Id.* at ¶¶ 35, 40). The plaintiff alleges the defendants were aware of the need for appropriate policies, procedures, and training regarding the identification and handling of inmates addicted to alcohol and suffering from or likely to suffer from withdrawal and failed to develop adequate policies and procedures or to train jail staff in this respect. (*Id.* at ¶ 23). In fact, according to the plaintiff, the defendants established a custom or policy of denying or delaying medical treatment for serious health conditions, including alcohol withdrawal, as well as a custom or policy of using outside medical providers and emergency medical resources that was so restrictive inmates were regularly denied prompt medical care for serious health conditions, including alcohol withdrawal. (*Id.* at ¶ ¶ 24, 31). The plaintiff cites *Harper* and *Parker* as providing examples of these customs and policies and, together with personal observations, inmate complaints, and general common sense, as putting the defendants on notice these customs and policies caused inmates to experience unnecessary pain and suffering. (*Id.* at ¶¶ 25, 33). Finally, the plaintiff alleges the defendants failed to adequately supervise, staff the Lawrence County Jail, fund medical services for the jail, and screen inmates for serious medical conditions upon their entry into the jail. (*Id.* at ¶ 41).

According to the amended complaint, the foregoing customs and policies were implemented as a result of an insurance agreement among QCHC, Sheriff Mitchell, and Lawrence County that indemnifies Sheriff Mitchell and his agents against claims related to health care services and led Sheriff Mitchell and Jailer Baker to ignore and refuse to address systemic deficiencies regarding medical care at the Lawrence County Jail. (*Id.* at ¶ 34).

## III. <u>Discussion</u>

Sheriff Mitchell, Jailer Baker, and Deputies Frye and Flannagin argue (1) Dan Letson lacks standing to maintain this action, (2) the amended complaint fails to state a § 1983 claim against them on which relief may be granted, (3) they are entitled to qualified immunity as to the plaintiff's § 1983 claims against them in their individual capacities, (4) the plaintiff's Eighth Amendment claims are due to be dismissed because Dan Letson was a pre-trial detainee, not a prisoner, and (5) they are entitled to absolute immunity as to the plaintiff's state-law tort claims against them.  (Doc. 35).  The plaintiff concedes Dan Letson should be terminated as a plaintiff. (Doc. 39 at 1-2).[4]  The plaintiff further concedes his state-law tort claims against Sheriff Mitchell, Jailer Baker, and Deputies Frye and Flannagin are due to be dismissed.  (*Id.* at 15). Whether the Due Process Clause of the Fourteenth Amendment or the Cruel and Unusual Punishments Clause of the Eighth Amendment affords protection from deliberate indifference to serious medical needs in this case,[5] the amended complaint fails to state a § 1983 claim against Sheriff Mitchell, Jailer Baker, Deputy Frye, or Deputy Flannagin on which relief may be granted, and these defendants are entitled to qualified immunity.

In their motion for leave to file a motion to dismiss the amended complaint, QCHC and Dr. Bates argue allowing them to file a motion to dismiss the amended complaint approximately six months after the plaintiff filed the amended complaint will not prejudice the plaintiff.  (Doc.

---

[4] This action was commenced on January 24, 2013 in the names of Dan Letson and Michael Letson, as attorney in fact for Dan Letson.  (Doc. 1).  After Dan Letson died on January 27, 2013, Michael Letson, as personal representative of Dan Letson's estate, was substituted for Dan Letson.  (Doc. 26).  Although Dan Letson was terminated as a plaintiff at that time, the amended complaint filed on June 23, 2014 again, and apparently inadvertently, names Dan Letson as a plaintiff.  (Doc. 30).

[5] Where a plaintiff is a pre-trail detainee, as opposed to a convict, the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment, protect him from deliberate indifference to his serious medical needs and inhumane conditions of confinement.  *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996); *Jordan v. Doe*, 38 F.3d 1559, 1564 (11th Cir. 1994).  However, analysis of a deliberate indifference claim under the Eighth Amendment is the same as under the Fourteenth Amendment. *Cottrell*, 85 F.3d at 1490; *Jordan*, 38 F.3d at 1564-65.

43).   The plaintiff does not challenge the motion for leave to file and has addressed the arguments made in the underlying motion to dismiss.   (*See* Doc. 46).   Rule 6(b)(1)(B) of the *Federal Rules of Civil Procedure* provides, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B). Although the motion to dismiss may be untimely for not being filed within the time prescribed by Rule 15(a)(3) of the *Federal Rules of Civil Procedure*, the motion for leave to file is due to be granted because the plaintiff will not be prejudiced by any untimely filing of a motion he does not oppose and has had an opportunity to address.  *See Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993) (factors considered in determining excusable neglect include danger of prejudice to non-movant, length of delay and its potential impact on judicial proceedings, reason for delay, and whether movant acted in good faith).  The motion to dismiss attached to the motion for leave to file, which argues the amended complaint fails to state a claim against QCHC or Dr. Bates on which relief may be granted, is also due to be granted.  (Doc. 43-2).

### A. § 1983 Claims

#### 1. Sheriff Mitchell, Jailer Baker, and Deputies Frye and Flannagin

##### a. Official Capacity

As Sheriff Mitchell, Jailer Baker, and Deputies Frye and Flannagin note in their motion to dismiss, the amended complaint does not specify, explicitly, whether these defendants are sue in their official capacities, individual capacities, or both.   (Doc. 35 at 5 n.1).   The parties' submissions address qualified immunity (Doc. 35 at 12-17; Doc. 39 at 11-14), which protects government officials sued in their individual capacities.  *Andujar v. Rodriguez*, 486 F.3d 1199,

1202 (11th Cir. 2007).  Therefore, it appears Sherriff Mitchell, Jailer Baker, and Deputies Frye and Flannagin are sued in their individual capacities.  *See Jackson v. Georgia Dept. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994) ("When it is not clear in which capacity the defendants are sued, the course of proceedings typically indicates the nature of the liability sought to be imposed.").  To the extent these defendants are also sued in their official capacities, they are entitled to Eleventh Amendment immunity.

The Eleventh Amendment bars suits for money damages against a state by its citizens, unless the state has waived its Eleventh Amendment immunity or Congress has abrogated it.  U.S. Const. amend. XI; *Carr v. City of Florence, Alabama*, 916 F. 2d 1521, 1524 (11th Cir. 1990).  The State of Alabama has not waived its Eleventh Amendment immunity.  Ala. Const. Art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."); *Carr*, 916 F.2d at 1525.  Nor has Congress abrogated Eleventh Amendment immunity in actions brought pursuant to § 1983.  *Carr*, 916 F.2d at 1525 (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).  Eleventh Amendment immunity extends to state officials sued in their official capacities, provided the state is the real, substantial party in interest.  *Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998).  Alabama sheriffs are state officials entitled to Eleventh Amendment immunity, except where injunctive relief is sought.  *Carr*, 916 F.2d at 1525 (citing *Parker v. Amerson*, 519 So. 2d 442, 443 (Ala. 1987)).  Alabama deputy sheriffs and Alabama jailers are also state official entitled to Eleventh Amendment immunity.  *Carr*, 916 F. 2d at 1527 (deputy sheriffs); *Lancaster v. Monroe County, Alabama*, 116 F. 3d 1419, 1429-30 (11th Cir. 1997) (jailers); *Estate of London-Richardson v. Surles*, 2013 WL 5570186, at *3 (N.D. Ala. Oct. 9, 2013) (jailers).

"Because the Eleventh Amendment represents a constitutional limitation on the federal judicial power established in Article III, federal courts lack jurisdiction to entertain claims that are barred by the Eleventh Amendment."  *McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) (internal citation omitted); *see also See Seminole Tribe of Florida v. State of Florida*, 11 F.3d 1016, 1021 (11th Cir. 1994) (Where no exception applies, "the Eleventh Amendment serves as a jurisdictional bar to the suit.").  Because "the jurisdictional bar embodied in the Eleventh Amendment is a 'rather peculiar kind of "jurisdictional" issue,'" a court is not required to raise the issue on its own initiative, but it may.  *McClendon*,  261 F.3d at 1256-59 (citing *Whiting v. Jackson State Univ.*, 616 F.2d 116, 127 n.8 (5th Cir. 1980) (considering Eleventh Amendment immunity *sua sponte* because the defense "is in the nature of a jurisdictional bar")*.*  Although Sheriff Mitchell, Jailer Baker, and Deputies Frye and Flannagin do not assert the defense of Eleventh Amendment immunity, to the extent they are sued in their official capacities, they are entitled to it.  Therefore, any § 1983 claims brought against them in their official capacities are due to be dismissed.

## b. Individual Capacity

Sheriff Mitchell, Jailer Bates, and Deputies Frye and Flannagin contend both that the amended complaint fails to state a § 1983 claim against them on which relief may be granted and that they are entitled to qualified immunity as to the § 1983 claims asserted against them in their individual capacities.  On a motion to dismiss, the Rule 12(b)(6) standard and the defense of qualified immunity become intertwined.  *Wooten v. Campbell*, 49 F.3d 696, 699 (11th Cir. 1995).  Under Rule 12(b)(6), the amended complaint is due to be dismissed as to Sheriff Mitchell, Jailer Bates, and Deputies Frye and Flannagin if it fails to state a claim against them on which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Qualified immunity immunizes these defendants from

liability if the amended complaint fails to state a violation of a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Andujar*, 486 F.3d at 1202 (internal quotation marks omitted).   "As the Supreme Court states, '[a] necessary concomitant to the determination of whether the constitutional right asserted by the plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.'" *Wooten*, 49 F.3d at 699 (quoting *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).

"Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted).   "It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (internal quotation marks omitted); *see also Williams v. Board of Regents of University System of Georgia*, 477 F.3d 1282, 1300 (11th Cir. 2007).

"An official asserting the affirmative defense of qualified immunity must initially establish that he was acting within his discretionary authority." *Skop v. City of Atlanta, Georgia*, 485 F.3d 1130, 1136 (11th Cir. 2007).   Here, it is clear and undisputed Sheriff Mitchell, Jailer Baker, and Deputies Frye and Flannagin were acting within their discretionary authority in connection with the events giving rise to this action.   *See Holloman ex rel. Holloman*, 370 F.3d at 1265 (government official acts within scope of his discretionary authority when "(a) performing a legitimate job-related function . . . (b) through means that were within his power to utilize.").   Therefore, the question is whether, " '[t]aken in the light most favorable to the party

10

asserting the injury, [ ] the facts alleged show the [defendants'] conduct violated a constitutional right,'" and if so, was the right clearly established? *Gonzalez*, 325 F.3d at 1234 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  As against a defendant in his individual capacity, there are two types of claims for deliberate indifference to serious medical needs—one for personal participation and one for supervisory liability.  *Harper v. Lawrence County, Alabama*, 592 F. 3d 1227, 1233 (11ᵗʰ Cir. 2010).

### i. <u>Personal Participation</u>

To state a personal participation claim, the plaintiff must sufficiently allege both an objectively serious medical need and that the defendant acted with deliberate indifference to that need.  *Id.* at 1234.  The plaintiff must also allege the defendant's conduct caused his injuries.  *Id.* at 1234.  An objectively serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment."  *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11ᵗʰ Cir. 2008).  Furthermore, such medical need must be one that, if left unattended, poses a substantial risk of serious harm. *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11ᵗʰ Cir. 2011).  "Deliberate indifference" requires that the defendant (1) had subjective knowledge of a risk of serious harm, (2) disregarded such risk, and (3) acted with more than gross negligence.  *Harper*, 592 F.3d at 1234.  Intentional refusal to provide medical care may constitute deliberate indifference.  *Ancata v. Prison Health Servs, Inc.*, 769 F.2d 700, 704 (11ᵗʰ Cir. 1985).  Delay in access to medical care may also constitute deliberate indifference.  *Adams v. Poag*, 61 F.3d 1537, 1544 (11ᵗʰ Cir. 1995).

Sheriff Mitchell, Jailer Baker, and Deputies Frye and Flannagin argue mere intoxication is not an objectively serious medical need.  (Doc. 35 at 9, 14).  The plaintiff correctly contends a person suffering from alcohol withdrawal has a serious medical need.  (Doc. 39 at 12-13).  The

Eleventh Circuit has recognized alcohol withdrawal as a serious medical need. *Lancaster v. Monroe County, Alabama*, 116 F. 3d 1419, 1425-26 (11th Cir. 1997) (citing *Morrison v. Washington County*, 700 F.2d 678 (11th Cir. 1983); *Fielder v. Bosshard*, 590 F.2d 105 (5th Cir. 1979)). The dispositive issue is whether the defendants had subjective knowledge Dan Letson was suffering from alcohol withdrawal and faced a risk of serious harm if he did not receive medical attention.

"Subjective knowledge" requires the defendant both be aware of facts from which the inference could be drawn that a substantial risk of harm exists and actually draw such inference. *Id.* "Subjective knowledge can be shown through circumstantial evidence." *Finn v. Haddock*, 459 Fed. App'x 833, 836 (11th Cir. 2012) (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). However, "[n]o liability arises under the Constitution for 'an official's failure to alleviate a significant risk that he should have perceived but did not . . . .'" *Burnette*, 533 F.3d at 1331 (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). Thus, "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." *Burnette*, 533 F.3d 1325.

The plaintiff does not allege Sheriff Mitchell or Jailer Baker had any contact with Dan Letson during his detention. Nor does he otherwise allege how these defendants could have actually known Dan Letson had a serious medical need during his detention that posed a substantial risk of serious harm to him if left untreated. For example, he does not allege a jailer informed either defendant that Dan Letson was experiencing Delirium Tremens or other side effects of alcohol withdrawal or that another detainee or an inmate conveyed any such information to Sheriff Mitchell or Jailer Baker. Similarly, he does not allege anyone told Sheriff Mitchell or Jailer Baker that Dan Letson was an alcoholic or that these defendants otherwise

knew Dan Letson was an alcoholic.  Because the plaintiff fails to allege any facts to support an allegation Sheriff Mitchell or Jailer Baker had subjective knowledge of a risk of serious harm to Dan Letson, the amended complaint fails to state a personal participation claim against these defendants, and they are entitled to qualified immunity.

The same is true with respect to Deputies Frye and Flannagin.  Although the plaintiff does allege the deputies at least had some contact with Dan Letson, it falls short of alleging facts to support any inference these defendants knew Dan Letson was more than merely intoxicated and required medical attention.

According to the amended complaint, at the time of his arrest by Deputy Frye on August 15, 2011, Dan Letson was "intoxicated."  (*Id.* at ¶ 14).  This is all the amended complaint alleges regarding Dan Letson's physical state on that date.  That Dan Letson was intoxicated when arrested on August 15, 2011, alone, does not show Deputy Frye knew Dan Letson had a serious medical need that exposed him to a risk of serious harm if not treated.  "[T]he Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol."  *Burnette*, 533 F.3d at 1333; *see also Sanders v. City of Dothan*, 409 Fed. App'x 285, 289 (11th Cir. 2011) ("Even if [the arresting officer] was aware that [the arrestee] had swallowed some amount of cocaine, there is no evidence that he was aware that [the arrestee] had swallowed an amount large enough to put him a serious risk of harm.").

The plaintiff alleges Dan Letson was so intoxicated at the time of his arrest on August 30, 2011, he could not stand or communicate and a Lawrence County district judge noted in her order Dan Letson " 'was intoxicated to such a degree he could not effectively communicate with the Court.'"  (*Id.* at ¶ 16).  According to the amended complaint, when Deputy Frye arrested Dan

Letson on October 11, 2011, Dan Letson was so intoxicated he had to be carried to the officers' vehicle.  (Doc. 30 at ¶ 17).  Although these allegations provide detail regarding the degree to which Dan Letson was intoxicated when he was arrested on August 30, 2011 and October 11, 2011, they fall short of demonstrating Deputy Frye or Deputy Flannagin knew Dan Letson had a serious medical need that required medical attention at those times.  A comparison of the factual allegations made in the *Harper* complaint to support the jailers' actual knowledge the detainee faced a risk of serious harm if he did not receive medical treatment for alcohol withdrawal with the factual allegations advanced to support Deputy Frye's and Deputy Flannagin's actual knowledge Dan Letson required medical attention throws into relief the insufficiency of the latter:

In *Harper*, the Eleventh Circuit held the complaint sufficiently alleged the jailers had actual knowledge a detainee was suffering alcohol withdrawal and required medical attention where, according to the complaint, those defendants reported the detainee was displaying erratic and strange behavior and other inmates informed those defendants the detainee was acting strangely, losing his balance, and had urinated on himself.  592 F.3d at 1234.  Taken together, those factual allegations regarding the behavior of the detainee show an awareness the detainee was more than merely intoxicated or even severely intoxicated and, furthermore, that the defendants recognized as much.  Whether erratic and strange behavior is consistent with intoxication, it suggests something more.  By contrast, here, the allegations Dan Letson could not stand or communicate on August 30, 2011 or October 11, 2011, are merely consistent with his intoxication and do not show Deputy Frye or Deputy Flannagin was aware of facts from which they could have drawn the inference Dan Letson faced a risk of serious harm if he did not receive medical attention at those times.

The plaintiff does not allege Deputy Frye or Deputy Flannagin had any contact with Dan Letson between his arrest on October 11, 2011 and his appearance before the Lawrence County District Court on October 13, 2011, during which period of time Dan Letson was detained at the Lawrence County Jail. Nor does he otherwise allege how the deputies could have actually known Dan Letson faced a risk of serious harm during that time if he did not receive medical attention. Finally, the plaintiff alleges deputies[6] obtained medical assistance for Dan Letson after the district court ordered Dan Letson be taken for treatment following the hearing on October 13, 2011. Therefore, there was no disregard of a risk of serious harm to Dan Letson on that occasion.

For the foregoing reasons, the amended complaint fails to state a personal participation claim against Deputy Frye or Deputy Flannagin, and these defendants are entitled to qualified immunity, as well.

### ii. Supervisory Liability

"The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks omitted). "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Id.* (internal quotation marks omitted).[7] "Supervisory liability lies where the defendant personally participates in the unconstitutional

---

[6] The amended complaint does not allege, specifically, these deputies were Deputies Frye and Flannagin. (*See id.* at ¶ 19).

[7] The plaintiff argues liability in this case is not based on a *respondeat superior* theory but rather on law holding deputies to be the alter egos of the sheriff. (Doc. 39 at 11). The cases the plaintiff cites discuss deputies as "alter egos" of the sheriff for purposes of determining absolute immunity from state-law claims not for purposes of imposing § 1983 liability on supervisory defendants. *See, e.g., Alexander v. Hatfield*, 652 So. 2d 1142, 1144 (Ala. 1994).

conduct or there is a causal connection between such conduct and the defendant's action."

*Harper*, 592 F.3d at 1236.  There are three ways to establish such a causal connection:

> "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  Alternatively, the causal connection may be established when a supervisor's custom or policy … result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

*Id.* (quoting *Cottone*, 326 F.3d at 1360).  As discussed, the amended complaint contains no factual allegations Sheriff Mitchell or Jailer Baker,[8] the supervisory defendants, personally participated in the alleged unconstitutional conduct.  Nor does the amended complaint allege any facts that would support an inference these defendants directed their subordinates to act unlawfully or knew their subordinates would act unlawfully and failed to stop them.  Therefore, the question is whether the amended complaint sufficiently alleges either a history of widespread abuse that put these defendants on notice of the need to correct alleged constitutional deprivations or a custom or policy that resulted in deliberate indifference to Dan Letson's serious medical needs.

The amended complaint alleges a causal connection based on customs and policies that resulted in harm to Dan Letson.  Specifically, the amended complaint alleges the supervisory defendants failed to develop adequate policies and procedures regarding the identification and handling of inmates addicted to alcohol and suffering from or likely to suffer from withdrawal; failed to train jail personnel regarding such inmates; established a custom or policy of denying or delaying medical treatment for serious health conditions, including alcohol withdrawal; and

---

[8] The motion to dismiss refers to Jailer Baker as a former jail administrator.  (Doc. 35 at 2).

established a custom or policy of using outside medical providers and emergency medical resources that was so restrictive inmates were regularly denied prompt medical care for serious health conditions, including alcohol withdrawal.  (Doc. 30 at ¶¶ 23-24, 31).  As factual support for these allegations, the amended complaint cites two prior lawsuits alleging deliberate indifference to the serious medical needs of detainees who suffered alcohol withdrawal while held at the Lawrence County Jail.  (*See* Doc. 30 at ¶¶ 21, 25, 33 (citing *Harper* and *Parker*)).[9]

"Demonstrating a policy or custom requires showing a persistent and wide-spread practice."  *Goebert v. Lee County*, 510 F. 3d 1312, 1332 (11th Cir. 2007) (internal quotation marks omitted).  Three isolated incidents of alleged deliberate indifference to the serious medical needs of detainees who suffered alcohol withdrawal at the Lawrence County Jail do not demonstrate a persistent and widespread practice.  *See Bell v. Shelby County, Alabama*, 2013 WL 5566269, at *7-8 (N.D. Ala. Oct. 8, 2013) (at Rule 12(b)(6) stage, holding three isolated incidents of alleged inadequate medical care occurring in 2004, 2007, and 2011, respectively, did not constitute persistent and widespread practice, especially given plaintiff did not allege any of these incidents were found to be constitutional violations); *Clark v. Evans*, 840 F. 2d 876, 885 (11th Cir. 1988) (at Rule 12(b)(6) stage, finding four incidents where employee of department of corrections failed to process commitment orders in five years would not have been sufficient to put supervisory official on notice of need for improved training or supervision); *Hawk v. Klaetsch*, 522 Fed. Appx. 733, 735 (11th Cir. 2013) (at summary judgment stage, holding three

---

[9] Although the amended complaint alleges "personal observation, inmate complaints, and general common sense" also put the supervisory defendants "on notice that the above-described customs or policies regarding medical care for inmates were harmful to the health of inmates and caused them to experience unnecessary pain and suffering" (Doc. 30 at ¶ 33), this is a conclusory allegation unsupported by facts.  The amended complaint does not identify any personal observations or inmate complaints regarding the provision of medical care to detainees suffering from alcohol withdrawal at the Lawrence County Jail, and general common sense is not a fact.  *See Iqbal*, 556 U.S. at 678 (naked assertions without factual development are insufficient to state a claim on which relief may be granted).

incidents where officer used excessive force over span on nearly five years did not constitute frequent, widespread, or rampant abuse).

Furthermore, the isolated incidents alleged in the amended complaint are too distant in time to raise a reasonable expectation discovery will reveal evidence connecting a custom or policy of the supervisory defendants and the alleged deprivation of Dan Letson's constitutional rights.  The events giving rise to the complaint in *Parker* occurred in March of 2007, and those giving rise to the complaint in *Harper* arose in April of 2007.  By contrast, the events giving rise to this action occurred in August and October of 2011, more than four years after the alleged constitutional violations at issue in *Parker* and *Harper*.  Therefore, while the *Parker* and *Harper* incidents may have been sufficiently close in time to support a custom or policy theory of supervisory liability in *Harper*, *see Harper*, 592 F.3d at 1236-37, those incidents are too removed in time from the incident at issue in this action to provide factual support for the supervisory liability claims asserted against Sheriff Mitchell and Jailer Baker.

Finally, the amended complaint does not allege either the *Parker* or the *Harper* action resulted in the finding of a constitutional violation.  In sum, the prior lawsuits do not support any inference there is a persistent and widespread practice of denying or delaying medical treatment for detainees suffering from alcohol withdrawal at the Lawrence County Jail.  Therefore, the amended complaint fails to sufficiently allege a causal connection between the supervisory defendants and the alleged harm Dan Letson suffered necessary to state a supervisory liability claim against these defendants, who are entitled to qualified immunity.[10]

---

[10] The amended complaint does not explicitly allege a "history of widespread abuse."  To the extent it attempts to do so, it fails.  "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks omitted).  For the same reasons the *Parker*, *Harper*, and Letson incidents do not sufficiently allege a consistent and widespread practice, they do not sufficiently allege obvious, flagrant, and rampant deprivations of continued duration.  Furthermore, the allegations the supervisory

### 2. QCHC and Dr. Bates

#### a. § 1983 Claims

Although private entities and physicians under contract to provide medical care to incarcerated persons may be subject to liability under § 1983, *Ancata*, 769 F.2d at 703; *Ort v. Pinchback*, 785 F.2d 1105, 1107 (11ᵗʰ Cir. 1986), QCHC and Dr. Bates argue the amended complaint fails to state a § 1983 claim against them.  The thrust of their argument is the amended complaint does not allege Dr. Bates or any other employee of QCHC was aware Dan Letson was ever detained at the Lawrence County Jail, much less that Dr. Bates or any other QCHC employee learned Dan Letson had a serious medical need that required attention.  (Doc. 43-2 at 5, 7).  This is true.  Just as the plaintiff does not allege Sheriff Mitchell or Jailer Baker had any contact with Dan Letson during his detention or otherwise allege how these defendants could have actually known Dan Letson had a serious medical need during his detention that posed a substantial risk of serious harm to him if left untreated, he makes no such allegations as to Dr. Bates.  Therefore, the amended complaint fails to state a personal participation claim against him.

The amended complaint alludes to Dr. Bates as having supervisory authority over medical care at the Lawrence County Jail, alleging the customs and policies of Sheriff Mitchell and Jailer Baker that caused a violation of Dan Letson's constitutional rights were also the customs and policies of Dr. Bates.  (Doc. 30 at ¶¶ 30, 35, 40, 41).  Because, as discussed, the amended complaint fails to sufficiently allege a persistent and widespread practice (or a widespread history) of denying or delaying treatment for detainees suffering alcohol withdrawal

---

defendants failed to adequately supervise, staff the Lawrence County Jail, fund medical services for the jail, and screen inmates for serious medical conditions upon their entry into the jail are conclusory and not supported by any factual allegations.  *See Iqbal*, 55 U.S. at 678 (naked assertions without factual development are insufficient to state a claim on which relief may be granted).

at the Lawrence County Jail, it fails to establish the causal connection between Dr. Bates and the alleged harm Dan Letson suffered necessary to state a supervisory liability claim against him.

Even had Dr. Bates or another QCHC employee been made aware of any medical attention Dan Letson required, this would not be enough to state a § 1983 claim against QCHC. Section 1983 liability cannot be imposed on a private entity that contracts to provide medical care to incarcerated persons pursuant to a *respondeat superior* theory. *Buckner v. Toro*, 116 F.3d 450, 452-53 (11th Cir. 1986). To state a claim for deliberate indifference to serious medical needs against such an entity, a plaintiff must show a custom or policy of the entity caused the alleged constitutional deprivation. *Id.* Again, the amended complaint does not allege sufficient facts to permit a plausible inference there was a persistent and widespread practice of denying or delaying medical treatment for detainees suffering from alcohol withdrawal at the Lawrence County Jail.[11] Therefore, it fails to state a § 1983 claim against QCHC.

### b. Negligence/Wantonness Claims

Because the § 1983 claims asserted against QCHC and Dr. Bates are due to be dismissed, the undersigned declines to exercise supplemental jurisdiction over the state law claims asserted against these defendants pursuant to 28 U.S.C. § 1367(c)(3). Subsection (a) of § 1367 permits a federal district court to exercise supplemental jurisdiction over state law claims that are so related to claims in an action over which it has original jurisdiction as to "form part of the same case or controversy under Article III of the United States Constitution." § 1367(a). However, subsection (c)(3) of § 1367 permits a federal district court to decline the exercise of supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction." §

---

[11] As noted with respect to Sheriff Mitchell and Jailer Baker, the allegations QCHC and Dr. Bates failed to adequately supervise, staff the Lawrence County Jail, fund medical services for the jail, and screen inmates for serious medical conditions upon their entry into the jail are conclusory and not supported by any factual allegations. *See Iqbal*, 55 U.S. at 678 (naked assertions without factual development are insufficient to state a claim on which relief may be granted).

1367(c)(3).   When determining whether to decline the exercise of supplemental jurisdiction under § 1367(c)(3), a court should consider judicial economy, convenience, fairness to litigants, and comity.   *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349-50 (1988).   Although this action has been pending for more than two years, it is in the early stages of litigation, such that the interests of fairness and judicial economy would not be disserved by declining the exercise of supplemental jurisdiction.   Furthermore, comity suggests the Alabama courts should be allowed to decide claims arising under Alabama law.   *See Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law.").   Finally, the Eleventh Circuit has encouraged district courts to dismiss remaining state law claims when federal claims have been dismissed prior to trial.   *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).   For these reasons, the state law claims asserted against QCHC and Dr. Bates are due to be dismissed without prejudice.[12]

## IV. Conclusion

For the foregoing reasons, the § 1983 claims asserted against Sheriff Mitchell, Jailer Baker, Deputies Frye and Flannagin, QCHC and Dr. Bates are due to be dismissed with prejudice.   Furthermore, the state law claims asserted against Sheriff Mitchell, Jailer Baker, and Deputies Frye and Flannagin are due to be dismissed with prejudice, while the state law claims against QCHC and Dr. Bates are due to be dismissed without prejudice.

**DONE** this 30th day of March, 2015.

*Staci G. Cornelius*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE

---

[12] Section 1367(d) tolls the statute of limitations for any claim asserted under § 1367(a) while the claim is pending and for a period of thirty days after it is dismissed, unless state law provides for a longer tolling period.  § 1367(d).